IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| LOWRINE CHARLTON, | ) | CASE NO. 4:09 CV 2713 |
| | ) | |
| Plaintiff, | ) | MAGISTRATE JUDGE |
| | ) | WILLIAM H. BAUGHMAN, JR. |
| v. | ) | |
| | ) | |
| COMMISSIONER OF SOCIAL | ) | **MEMORANDUM OPINION** |
| SECURITY, | ) | **AND ORDER** |
| | ) | |
| Defendant. | ) | |

## Introduction

This is an action for judicial review of the final decision of the Commissioner of Social Security denying the applications of the plaintiff, Lowrine Charlton, for disability insurance benefits and supplemental security income. The parties have consented to magistrate judge's jurisdiction.

The Administrative Law Judge ("ALJ"), whose decision became the final decision of the Commissioner, found that Charlton had severe impairments consisting of degenerative disc disease, diabetes mellitus, depression, anxiety, and obesity.[1] The ALJ made the following finding regarding Charlton's residual functional capacity:

> [T]he claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) with no balancing, climbing, crawling or kneeling; the claimant may not perform tasks requiring repetitive bending at the waist to 90 degrees; the claimant may not perform tasks requiring the operation of foot controls; the claimant is limited to simple and

---

[1] Transcript ("Tr.") at 14.

repetitive work performed using routine work processes and in routine work settings.[2]

Based on that residual functional capacity, the ALJ found Charlton capable of her past relevant work as telephone solicitor/telemarketer and, therefore, not under a disability.[3]

Charlton asks for reversal of the Commissioner's decision on the ground that it does not have the support of substantial evidence in the administrative record.  Specifically, Charlton argues that the ALJ erred by not including any limitations in the hypothetical to the vocational expert or in the residual functional capacity finding relating to interactions with the public, co-workers, and supervisors.[4]

I conclude that the ALJ's credibility finding is inadequately articulated, and, therefore, the residual functional capacity finding lacks the support of substantial evidence.  I must remand for further proceedings.

## Analysis

Charlton argues that the residual functional capacity finding lacks the support of substantial evidence because it does not include a limitation on interaction with the public, co-workers, and supervisors.

---

[2] *Id.* at 16.

[3] *Id.* at 18.

[4] In her brief, Charlton also challenged the ALJ's failure to withhold his decision pending receipt of additional records from a Dr. Thorn, a psychiatrist.  ECF # 18 at 1. Counsel for Charlton withdrew this challenge at the oral argument.

She posits that the ALJ should have included such a limitation in the residual functional capacity finding because the consulting examining psychologist, Stanley J. Palumbo, Ph.D., rated Charlton's ability to relate to fellow employees, supervisors, and the public as moderately impaired.[5]  Kristen Haskins, Psy.D., the state agency reviewing psychologist, found Charlton moderately impaired in relating to supervisors and co-workers.[6] In so finding, she gave great weight to Dr. Palumbo's evaluation.[7]

Bottom line, Charlton maintains that if the ALJ had included the relational limitation in the hypothetical to the vocational expert, such limitation may have changed the vocational expert's opinion as to capability for past relevant work and prompted further questioning about jobs existing for purposes of step five analysis.

The ALJ gave "little weight" to the opinions of Drs. Palumbo and Haskins because "these sources relied almost exclusively on the claimant's subjective complaints," which he did not find credible.[8]

To be sure, Dr. Palumbo administered no psychological tests.  He formulated his opinion based on his interview or mental status examination of Charlton.[9]  Dr. Haskins

---

[5] *Id.* at 236.

[6] *Id.* at 249.

[7] *Id.* at 250.

[8] *Id.* at 17.

[9] *Id.* at 235-36.

performed a record review only and, as noted above, assigned great weight to Dr. Palumbo's evaluation.[10]

Given the nature of Charlton's mental impairments, depression, and anxiety, Dr. Palumbo's evaluation cannot be dismissed per se because he relied on a mental status examination based largely on Charlton's mood, affect, and verbal responses during the interview. The ALJ acknowledges this by basing his discounting of Dr. Palumbo's opinion, and Dr. Haskins's' opinion relying thereon, on credibility analysis.[11]

I set out the proper analytical framework for assessing credibility in *Cross v. Commissioner of Social Security*.[12]  I incorporate Cross's credibility discussion here by reference.

Measuring the ALJ's credibility analysis here by the standards set in *Cross*, I make three observations. First, because of the nature of the impairments (anxiety and depression) and the limitations (social interaction) at issue, there does not exist a body of objective medical evidence in the record creating an "informal presumption" going into the analysis of the credibility factors set out by the regulations.[13]  Second, although the ALJ need not articulate on all the factors set forth in the regulations,[14] here he relied exclusively on

---

[10] *Id.* at 250.

[11] *Id.* at 17.

[12] *Cross v. Comm'r of Soc. Sec.*, 373 F. Supp. 2d 724, 732-33 (N.D. Ohio 2005).

[13] *Id.* at 732.

[14] *Id.* at 733.

-4-

statements made by Charlton in her adult function report,[15] which he believed contradicted her hearing testimony. Third, the ALJ recited the boiler plate rejection of Charlton's credibility,[16] and failed to provide a unified statement explaining his finding in terms of the regulation and providing this Court with the ability to trace the path of his reasoning.[17]

The Commissioner concedes that the ALJ's articulation is sparse but argues that it is enough or, alternatively, harmless error.

Specifically, the ALJ's credibility analysis consists of the conclusory assertion that Charlton's statements as to her limitations "are not credible to the extent they are inconsistent with the above residual functional capacity assessment,"[18] and his comments on her adult function report.[19]

With due respect for the ALJ's deference, his comments regarding the adult function report do not support his assignment of "little weight"[20] to the opinions of Drs. Palumbo and Haskins. The adult function report depicts a woman with substantial limitations caused by pain, who interacts primarily with her family and has minimal contact with the outside world. That she talks daily on the telephone[21] does not address her ability to interact in person with

---

[15] Tr. at 17.

[16] *Id.*

[17] *Cross*, 373 F. Supp. 2d at 733.

[18] Tr. at 17.

[19] *Id.* at 15 (referenced as Exhibit 4E (Tr. at 176-83)).

[20] *Id.* at 18.

[21] *Id.* at 180.

others in a work setting.  And the reference to eating in restaurants[22] is a misreading of the report.  Charlton states in the report that before her current impairment, she and her family "use to go out and just eat dinner...."[23]  As of the time of the report, her trips outside the house consisted of going to a family member's house twice a month[24] and going to the grocery store for short periods twice a month with her daughter.[25]  Given this limited contact outside her home, it is understandable that she has no problems with family, friends, neighbors, or others[26] and no difficulty with authority figures.[27]  And although she has no history of job termination because of relational problems,[28] a relevant consideration, that does not speak to her relational ability as of the time of the report to the extent of providing substantial evidence to discount her credibility and diminish the weight of the opinions of medical sources.

In sum, the ALJ's shortcoming by the standards of *Cross* are not sufficiently minimal to constitute either substantial compliance or harmless error.

It may well be, as the Commissioner argues, that a remand will result in a finding of no disability.  The ALJ may find that the record supports no relational limitations based on

---

[22] *Id.* at 15.

[23] *Id.* at 180.

[24] *Id.*

[25] *Id.* at 179.

[26] *Id.* at 180.

[27] *Id.* at 181.

[28] *Id.* at 182.

a proper credibility analysis.  Or the ALJ may include relational limitations in his hypothetical to the vocational expert and residual functional capacity finding and receive an opinion from the vocational expert supporting a finding of no disability at step four or step five.  Nevertheless, based on the record before me, substantial evidence does not support the residual functional capacity finding, and the case must be remanded for reconsideration of that finding.

## Conclusion

Based on the foregoing, I conclude that the ALJ's credibility finding, the weight assigned to the opinions of Drs. Palumbo and Haskins, and the residual functional capacity finding are not supported by substantial evidence.  I, therefore, reverse the decision of the Commissioner to deny Charlton's applications and remand the case under sentence four of 42 U.S.C. § 405(g) for reconsideration of the above identified findings.

For purposes of any potential application for attorney's fees under the Equal Access to Justice Act,[29] the Court concludes that the position of the Commissioner was substantially justified.

IT IS SO ORDERED.

Dated:  November 16, 2010                    s/ William H. Baughman, Jr.
                                             United States Magistrate Judge

---

[29] 28 U.S.C. § 2412(d)(1)(A).